```
                                                      ┌─────────────────────────────┐
                                                      │ USDC SDNY                   │
UNITED STATES DISTRICT COURT                          │ DOCUMENT                    │
SOUTHERN DISTRICT OF NEW YORK                         │ ELECTRONICALLY FILED        │
                                                      │ DOC #:_____ │
                                                      │ DATE FILED: 06/10/2024      │
                                                      └─────────────────────────────┘
```

---------------------------------------------------------------------X
                                :

CLYTON HALL,                           :

                    Plaintiff,         :

                                  :                    23-cv-2496 (LJL)

           -v-                     :

                                  :           OPINION AND ORDER

MOUNTAIN VALLEY INDEMNITY COMPANY,     :

                   Defendant.      :

                                  :

---------------------------------------------------------------------X

**LEWIS J. LIMAN, United States District Judge:**

       Defendant Mountain Valley Indemnity Company ("Defendant" or "Mountain Valley") and Plaintiff Clyton Hall ("Plaintiff" or "Hall") cross-move, pursuant to Federal Rule of Civil Procedure 56, for summary judgment.  Dkt. Nos. 22, 28.

       For the following reasons, Defendant's motion for summary judgment is granted, and Plaintiff's motion for summary judgment is denied.

## BACKGROUND

       The following facts are drawn from the parties' statements of material facts submitted pursuant to Local Rule 56.1 and the materials submitted in connection with the motions.  Dkt. Nos. 26, 30, 31, 35.  The facts are undisputed unless otherwise indicated.

       Plaintiff Clyton Hall is a seventy-seven year-old disabled man who has been the owner of a three-story building located at 1022 Ogden Avenue, Bronx, NY 10452 (the "Premises") since 1996.  Dkt. No. 26 ¶¶ 1–2; Dkt. No. 31 ¶¶ 1–2.  Hall has maintained homeowners' insurance with either Mountain Valley or its predecessor since January 12, 2002—a period of more than twenty years.  Dkt. No. 26 ¶ 8; Dkt. No. 31 ¶ 8.

Mountain Valley is the insurer on a homeowners' policy, identified by number 2005817864, (the "Policy"), issued to Hall effective January 12, 2022 through January 12, 2023, (the "Policy Period"), providing certain coverage to the Premises.  Dkt. No. 28 ¶ 1; Dkt. No. 35 ¶ 1.  The Policy consists of a "Homeowners 2 Broad Form" (the "Broad Form"), as well as a set of Declarations, including an Amended Declaration effective January 12, 2022 and covering the Policy Period January 12, 2022 to January 12, 2023.  *See* Dkt. No. 22-5.  Section 1 of the Broad Form contains the "Property Coverages", and provides in "Coverage A" that Mountain Valley will cover the "dwelling on the 'residence premises.'"  *Id.* at ECF p. 15.  It states, in pertinent part:

COVERAGE A—Dwelling

We cover:

1.      The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling;

2.      Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the 'residence premises.'

*Id.*  The Policy defines the "Insured location" in pertinent part, as follows:

"Insured location" means:

a.      The "residence premises";

b.      The part of other premises, other structures and grounds used by you as a residence and:

(1)      Which is shown in the Declarations; or

(2)      Which is acquired by you during the policy period for your use as a residence.

c.      Any premises used by you in connection with a premises in 4.a and 4.b above;

*Id.* at ECF p. 14.  In turn, "Residence premises" is defined by the Policy as follows:

"Residence premises" means:

> a.     The one family dwelling, other structures, and grounds; or
>
> b.     That part of any other building;
>
> where you reside and which is shown as the "residence premises" in the Declarations.
>
> "Residence premises" also means a two family dwelling where you reside in at least one of the family units and which is shown as the "residence premises" in the Declarations.

*Id.*

The Amended Declarations of the Policy contains Mountain Valley's agreement to renew the Policy for the Policy Period January 12, 2022 to January 12, 2023, in consideration of the payment of a renewal premium. *Id.* at ECF p. 4. It identifies the Named Insured as Clyton Hall with an address of 1022 Ogden Avenue, Bronx, NY 10452. *Id.* It states: "The residence premise covered by this policy is located at the above insured address unless otherwise stated below." It has a line that is blank and then below that contains a row of information intended to describe certain features of the residence premises. *Id.* Under a column titled "No. Families" the Declaration states: "2" and in a column headed "Occupancy," it states "Primary." *Id.*

The Premises is a three-story building that consists of three units: a ground-floor unit, a second-floor unit, and a third-floor unit. Dkt. No. 26 ¶ 28; Dkt. No. 31 ¶ 28; Dkt. No. 28 ¶ 8; Dkt. No. 35 ¶ 8. The exterior of the Premises contains two distinct tones of paint, gray on the ground floor, and tan on the second and third floors. Dkt. No. 26 ¶ 48; Dkt. No. 31 ¶ 48. At or around the time of the loss at issue in this action, Plaintiff resided on the third floor of the Premises, which contained a kitchen, dining room, bedroom, and bathroom. Dkt. No. 26 ¶¶ 3, 29; Dkt. No. 31 ¶¶ 3, 29. Plaintiff rented the second-floor unit of the Premises, which contained a kitchen, dining room, bedroom, and bathroom, to tenants. Dkt. No. 26 ¶¶ 3, 29; Dkt. No. 31

¶¶ 3, 29.  The ground-floor unit contained furniture, including a bed and a sofa.  Dkt. No. 28 ¶ 14; Dkt. No. 35 ¶ 14.  It also had windows, a refrigerator, a stove, a sink, cabinets and counterspace and a separate bathroom complete with a shower.  Dkt. No. 28 ¶ 14; Dkt. No. 35 ¶ 14.  The ground-floor unit also has its own unique lock and key separate from any other unit at the Premises.  Dkt. No. 28 ¶ 14; Dkt. No. 35 ¶ 15.  The ground floor of the Premises also contains a boiler, a water heater, and utilities.  Dkt. No. 26 ¶ 33; Dkt. No. 31 ¶ 33.  At or around the time of the loss, Plaintiff's son, who is an electrician, resided on the ground floor.  Dkt. No. 26 ¶¶ 4, 31; Dkt. No. 31 ¶¶ 4, 31.

The Premises has only two electric and two gas meters, with the ground floor and the third floor connecting to a single electric meter and a single gas meter, while the second floor connected to the other electric meter and gas meter.  Dkt. No. 26 ¶ 34; Dkt. No. 31 ¶ 34.  There also are only two mailboxes at the Premises, one for Plaintiff and the other for the second-floor tenant.  Dkt. No. 26 ¶ 36; Dkt. No. 31 ¶ 36.

On May 9, 2022, a heavy fire broke out at the Premises, destroying the building and rendering it uninhabitable.  Dkt. No. 26 ¶¶ 1, 5; Dkt. No. 31 ¶¶ 1, 5.  Plaintiff submitted a timely sworn proof-of-loss to Defendant for $551,073.37 in property damage and an $80,000 loss in personal property.  Dkt. No. 26 ¶ 6; Dkt. No. 31 ¶ 6.  Defendant conducted a claims investigation and inspected the Premises upon receiving notice of the fire.  Dkt. No. 26 ¶ 19; Dkt. No. 31 ¶ 19.  On May 13, 2022, Defendant sent a reservation-of-rights letter to Plaintiff, stating that it was investigating whether it could disclaim coverage based on the configuration of the building.  Dkt. No. 26 ¶ 20; Dkt. No. 31 ¶ 20.  The letter stated: "Our preliminary investigation indicates that the risk may be occupied as a three family at the time of the loss.  Accordingly, we reserve our rights

to disclaim coverage for this loss as the dwelling may not have met the Residence Premise definition of the policy." Dkt. No. 22-5 at ECF p. 2; Dkt. No. 26 ¶ 20; Dkt. No. 31 ¶ 20.

By letter dated September 6, 2022, Defendant denied coverage for Plaintiff's claim on the grounds that the Premises was a three-family dwelling, thereby removing the Premises from the definition of a "residence premises" as required by the policy, and disqualifying it from the coverage grant. Dkt. No. 30 ¶ 18; Dkt. No. 35 ¶ 18. The denial letter noted that the Premises contained three separate units, each with its own kitchen, bathroom, and separate entrance, and that the Premises was classified as a three-family dwelling with the New York City Department of Finance. Dkt. No. 22-1 at ECF p. 2.

## PROCEDURAL HISTORY

Plaintiff filed this action on March 24, 2023, seeking a declaratory judgment that Plaintiff's claim is covered under the Policy and must be paid by Defendant, and bringing a claim of breach of contract based upon Defendant's failure to pay the insurance claim. Dkt. No. 1.

On February 7, 2024, Plaintiff filed this motion for summary judgment, along with two declarations, a memorandum of law, and Local Rule 56.1 statement in support of the motion. Dkt. Nos. 22–26. Defendant filed a cross-motion for summary judgment, along with two declarations, a memorandum of law, a reply Local Rule 56.1 statement in response to Plaintiff's Local Rule 56.1 statement, and a Local Rule 56.1 statement in support of its motion, on February 21, 2024. Dkt. Nos. 28–33. Plaintiff filed a memorandum of law in opposition to Defendant's cross-motion and in further support of his motion, along with a reply Local Rule 56.1 statement in response to Defendant's Local Rule 56.1 statement, on February 28, 2024. Dkt. Nos. 34–35. Defendant filed a reply memorandum in further support of the cross-motion on March 6, 2024. Dkt. No. 36.

## LEGAL STANDARD

Summary judgment under Federal Rule of Civil Procedure 56 is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the suit under the governing law." *WWBITV, Inc. v. Village of Rouses Point*, 589 F.3d 46, 49 (2d Cir. 2009) (quoting *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)).

In determining whether there are any genuine issues of material fact, the Court must view all facts "in the light most favorable to the non-moving party," *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008), and the movant bears the burden of demonstrating that "there is no genuine dispute as to any material fact," Fed. R. Civ. P. 56(a). If the movant meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). It may not rely on "mere speculation or conjecture as to the true nature of the facts," *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted), or "on the allegations in [its] pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible," *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citation omitted). Rather, to survive a summary judgment motion, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record," Fed. R. Civ. P. 56(c)(1)(A), and demonstrating more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). If "the party opposing

summary judgment propounds a reasonable conflicting interpretation of a material disputed fact," summary judgment shall be denied.  *Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 9–10 (2d Cir. 1983).  Where each party moves for summary judgment, "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration."  *Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001) (citing *Schwabenbauer v. Bd. of Educ. of City Sch. Dist. of the City of Olean*, 667 F.2d 305, 314 (2d Cir. 1981)).

Local Civil Rule 56.1 of the Southern District of New York sets forth specific requirements about how the facts relied upon by the moving party and disputed by the opposing party are to be presented.  Any party moving for summary judgment must "annex[] to the notice of motion a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."  S.D.N.Y. L.R. 56.1(a).  Local Rule 56.1(b), in turn, requires the party opposing the motion to "include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried."  *Id.* L.R. 56.1(b).  All statements in a Local Rule 56.1 submission "must be followed by citation to evidence which would be admissible."  *Id.* L.R. 56.1(d).  "Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."  *Id.* L.R. 56.1(c).  In accordance with Local Rule 56.1, "the movant's statements are deemed to be admitted where [the non-moving party] has failed to

specifically controvert them with citations to the record." *Rhee v. SHVMS, LLC*, 2023 WL 3319532, at *4 (S.D.N.Y. May 8, 2023) (quotation marks and citation omitted).

Under New York law, which both parties presume to be applicable, contract interpretation "is a matter of law for the court to decide." *Int'l Multifoods Corp. v. Com. Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002). "When considering an insurance policy, courts apply the same rules of construction applicable to contracts generally." *Koczwara v. Nationwide Gen. Ins. Co.*, 2022 WL 1471121, at *4 (S.D.N.Y. May 10, 2022). Summary judgment in a case involving questions of contract interpretation is appropriate if the words of the contract "convey a definite and precise meaning absent any ambiguity." *Seiden Assocs., Inc., v. ANC Holdings*, 959 F.2d 425, 428 (2d Cir. 1992); *see also Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 232 F.3d 153, 157 (2d Cir. 2000) ("Summary judgment is generally proper in a contract dispute only if the language of the contract is wholly unambiguous."). A contractual provision is ambiguous if it "could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *L. Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 466 (2d Cir. 2010).

## DISCUSSION

Plaintiff and Defendant dispute whether the Premises is covered under the plain terms of the Policy. Dkt. No. 25 at 7–14; Dkt. No. 32 at 6–15. In addition, Plaintiff argues that even if the Court rejects his interpretation of the Policy, he is entitled to coverage for the loss caused to the Premises based on the principles of waiver and estoppel. Dkt. No. 25 at 14–19. Finally, Plaintiff argues that he is entitled to coverage for the loss to the Premises based on principles of

mutual mistake and reformation.  Dkt. No. 25 at 19–24.  The Court considers each argument in turn.

## I.      Interpretation of the Policy

The parties proffer alternative interpretations of the Policy, and whether the Premises falls within the Policy's grant of coverage.  Defendant argues that the Policy must be interpreted as a whole and, under such approach, that Plaintiff is entitled to coverage for only a two-family dwelling, that the definition of a two-family dwelling is structural and refers to the number of families that the dwelling could accommodate, and that because the Premises had three units, it falls outside the Policy coverage.  Dkt. No. 32 at 6–15.  For his part, Plaintiff argues that the operative document is the Amended Declaration (or the Renewal Certificate) and that, under that document, the residence premises is the building at 1022 Ogden Avenue.  Dkt. No. 25 at 8.  Plaintiff further argues that the number of families stated in the Amended Declaration refers to "the number of families living in the building and not the number of units," or at least contains an ambiguity that should be construed in favor of the insured.  *Id.* at 8–11.  Plaintiff also directs the Court's attention to the Policy language that defines residence premises to include "[t]hat part of any other building; Where you reside and which is shown as the 'residence premises' in the Declarations."  *Id.* at 12.  In Plaintiff's view, the Court should interpret that language to provide coverage for "a building of any size and configuration, so long as the insured resides in it."  *Id.* at 13.

The Court interprets the Policy according "to principles of contract interpretation." *Burlington Ins. Co. v. N.Y.C. Transit Auth.*, 79 N.E.3d 477, 481 (N.Y. 2017) (quoting *Universal Am. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 37 N.E.3d 78, 80 (N.Y. 2015)).  "[I]f an insurance policy is 'clear and unambiguous,' it is to be given its 'plain and ordinary meaning,' and courts are to refrain from rewriting the agreement."  *Duane Reade, Inc. v. St. Paul Fire &*

*Marine Ins. Co.*, 600 F.3d 190, 201 (2d Cir. 2010) (quoting *Dalton v. Harleysville Worcester Mut. Ins. Co.,* 557 F.3d 88, 90 (2d Cir. 2009)).  "[C]ourts should read a contract as a harmonious and integrated whole to determine and give effect to its purpose and intent."  *Nomura Home Equity Loan, Inc., Series 2006-FM2 v. Nomura Credit & Cap., Inc.*, 92 N.E.3d 743, 747 (N.Y. 2017) (quotations omitted).  "Courts may not, through their interpretation of a contract, add or excise terms or distort the meaning of any particular words or phrases, thereby creating a new contract under the guise of interpreting the parties' own agreements."  *Id.* at 748.  "In that regard, a contract must be construed in a manner which gives effect to each and every part, so as not to render any provision 'meaningless or without force or effect.'"  *Id.* (quoting *Ronnen v. Ajax Elec. Motor Corp.*, 671 N.E.2d 534, 536 (N.Y. 1996)).  "[A]mbiguities in an insurance policy are to be construed against the insurer."  *Dean v. Tower Ins. Co. of N.Y.*, 979 N.E.2d 1143, 1145 (N.Y. 2012) (quoting *Breed v. Ins. Co. of N. Am.*, 385 N.E.2d 1280, 1282 (1978)).  Even so, "[i]t is well established under New York law that [the] policyholder bears the burden of showing that the insurance contract covers the loss."  *Morgan Stanley Grp. Inc. v. New Eng. Ins. Co.*, 225 F.3d 270, 276 (2d Cir. 2000).

The Policy provides coverage to the "dwelling on the 'residence premises' shown in the Declarations."  Dkt. No. 22-5 at ECF p. 15.  Thus, a home is covered under the Policy if it: (1) is "on the 'residence premises'"; and (2) is shown in the Declarations.  The first requirement, that the home be a residence premises, is satisfied if: (1) the Named Insured resides in it; (2) it is described in the Declarations; and (3) it is either the "one family dwelling, other structures, and grounds" where the Named Insured resides or the part of another building where the Named Insured resides, or the entirety of a two-family dwelling in which the Named Insured resides in one of the family units.  *Id.* at ECF p. 14.  The Amended Declaration, which governed the period

10

in which the fire occurred, states that "the residence premise covered by [the] policy is located at the above insured address unless otherwise stated below." *Id.* at ECF p. 4.  The address listed above that statement is 1022 Ogden Avenue, Bronx, NY 10452, and below the statement lies a line and then a row of information that does not contain a physical address, but does contain many identifying characteristics, including that the "No. Families" is "2." *Id.*

Under New York law, the number of dwelling units contained in a building is determined by its structural configuration and the number of self-contained dwelling units, and not by the number of families who reside in it. *Koczwara*, 2022 WL 1471121, at *5; *Almonte v. Castlepoint Ins. Co.*, 3 N.Y.S.3d 284, at *4 (Sup. Ct. Oct. 8, 2014), *aff'd*, 33 N.Y.S.3d 718 (1st Dep't 2016); *Castlepoint Ins. Co. v. Jaipersaud*, 4 N.Y.S.3d 498 (1st Dep't 2015) (holding that coverage is determined by "structural configuration" of premises and not certificate of occupancy because "the number of families is determined by actual use, even if in violation of the certificate of occupancy"); *Dauria v. CastlePoint Ins. Co.*, 960 N.Y.S.2d 105, 106 (1st Dep't 2013) ("The term 'family,' as used in 'family units,' 'one family dwelling' and 'two family dwelling,' necessarily relates to an entire self-contained dwelling unit.").  A building with two separate units is no less a two-family dwelling if members of more than one family reside in one of the units than a building with three separate units becomes a two-family unit because of the happenstance that persons related to one another are spread over two of the units. *Compare Almonte*, 3 N.Y.S.3d at 284 (premises has three family units even though two units occupied by members of the same extended family), *with Walker v. Tighe*, 36 N.Y.S.3d 228, 230 (2d Dep't 2016) (rejecting argument that premises had more than four units when it was configured to have four units).

Defendant has established that the Policy is not ambiguous, and that under the Policy, Plaintiff is not entitled to coverage of a premises that includes three units.  Instead, the Policy establishes that Plaintiff is entitled to coverage of a dwelling with at most two family units located at 1022 Ogden Avenue, Bronx, NY 10452.  *See Multani v. Castlepoint Ins. Co.*, 200 N.Y.S.3d 54, 56 (2d Dep't 2023) (holding that policy limiting coverage to losses incurred on residence premises, defined as a one-family dwelling or a two-family dwelling, did not apply to a property configured as a five-family dwelling); *Jaipersaud*, 4 N.Y.S.3d at 498 (1st Dep't 2015); *Almonte*, 3 N.Y.S.3d at *3 ("It is undisputed that the policy defines 'insured location' as the 'residence premises,' and 'residence premises' is defined as meaning the '*one* family dwelling . . . where you reside' and 'also means a *two*-family dwelling where you reside in at least one of the family units' (emphasis added).  Thus, to be eligible for coverage, the insured premises must be a one or two family owner occupied home, but not a three-family home." (alteration in original)); *Dauria*, 960 N.Y.S.2d at 106.  The definition of the residence premises in the Broad Form provided for coverage of a one-family dwelling in which the Named Insured lived, or "a two family dwelling where [the Named Insured] reside[s] in at least one of the family units and which is shown as the 'residence premises' in the Declarations."  Dkt. No. 22-5 at ECF p. 14. The limitation is further established by the description of the residence premises set forth in the Declaration, which described the "No. Families" as "2."  *See Hermitage Ins. Co. v. LaFleur*, 953 N.Y.S.2d 209 (1st Dep't 2013) (holding that "the only reasonable interpretation of the question '# Families' is that it seeks the number of separate dwelling units in the building"); *Canale v. Castlepoint Ins. Co.*, 116 N.Y.S.3d 1208(A) (Sup. Ct. May 20, 2019) (holding that "No. Families" refers to the number of separate family units in a dwelling).

There also is no genuine issue of fact that, at the time of the fire, the Premises located at 1022 Ogden Avenue had three family-dwelling units, in the form of three self-contained dwelling units.[1]  Each of the three floors has its own kitchen, bathroom, living space, and separate entrance; each is therefore a self-contained unit.  *See Lema v. Tower Ins. Co. of N.Y.*, 990 N.Y.S.2d 231 (2d Dep't 2014) (holding that structural configuration of residence, which had "three separate dwelling units, each with its own kitchen, bathroom, and separate entrance" was prima facie evidence that it was a three-family dwelling); *Elshazly v. Castlepoint Ins. Co.*, 29 N.Y.S.3d 847, at *3 (Sup. Ct. Nov. 16, 2015) ("[T]he Premises is a three family dwelling, in that the Premises contained three separate living units, each with its own kitchen, bathroom, living room and bedroom."); *Jaipersaud*, 4 N.Y.S.3d at 498 (holding that a "home was a three-family dwelling, rather than a two-family dwelling as covered by the subject policy" because each of the three units "had separate entrances").  Together, the Policy's unambiguous conferral of coverage to at-most a premises that contained two-units, and the indisputable finding that the Premises contained three units, lead to the conclusion that there is no genuine dispute as to whether the Policy covered the Premises.

---

[1] Plaintiff cites evidence that the New York City Department of Housing Preservation and Development ("HPD") classified the building as having two units.  Dkt. No. 26 ¶ 38.  The citation is supported by a two-page document, the second page of which is an affidavit from 1956, by the owner of the Premises in 1956, that the Premises would not be occupied by more than two families while it was under his supervision and control.  Dkt. No. 22-11 at ECF p. 2.  No further explanation is given as to how HPD classifies buildings or to support that the classification has any relevance with respect to the Premises during the Policy Period.  As of 2014, the New York City Department of Finance classified the Premises as a three-family premises.  Dkt. No. 26 ¶ 37; Dkt. No. 22-7 at ECF p. 1.  The classification of the Premises by the New York City departments for their own purposes and prior to the Policy Period does not create a genuine issue as to the structural features of the Premises during the Policy Period.  *See Tower Ins. Co. of N.Y. v. Atuana*, 4 N.Y.S.3d 523 (1st Dep't 2015); *Hermitage Ins. Co. v. LaFleur*, 953 N.Y.S.2d 209, 210 (1st Dep't 2013).

The language of the Policy, as well as the configuration of the Premises, are both nearly identical to those in previous cases in which New York courts have found there to be no coverage.  In *Elshazly* for example, the policy language at issue defined "residence premises" as follows:

> 8. Residence premises' means:
>
>> a. The one family dwelling, other structures, and grounds; or
>>
>> b. That part of any other building; where you reside and which is shown as the residence premises' in the Declarations.
>>
>> Residence premises' also means a two family dwelling where you reside in at least one of the family units and which is shown as the residence premises' in the Declarations.

29 N.Y.S.3d at *3.  The court found that the dwelling at issue did not fall within the definition of the residence premises because "there were 'three separate living units,' each with its own bedroom, bathroom, kitchen (or kitchenette) and separate entrance."  *Id.* at *4.

In *Almonte*, the policy language similarly defined the "residence premises" as:

> a. The one family dwelling, other structures, and grounds;
>
> or
>
> b. That part of any other building;
>
> where you reside and which is shown as the "residence premises" in the Declarations.
>
> "Residence Premises" also means a two family dwelling where you reside in at least one of the family units and which is shown as the "residence premises" in the Declarations.

3 N.Y.S.3d at *1 n.1.  The court then found that the insurance company had made a "sufficient prima facie showing that the insured premises is three-family residence that does not qualify for coverage" because each "of the three living units contained its own kitchen, bathroom and living

area." *Id.* at *3.  The undisputed facts regarding the Policy and Premises at issue here render appropriate the same result.

Plaintiff offers two further arguments in support of coverage.  First, Plaintiff argues that the residence premises should be defined solely by the Declaration and that because the Declaration refers to the Residence Premises as being at 1022 Ogden Avenue, the structure at that location was covered by the Policy regardless of the number of units it contained.  Dkt. No. 25 at 7–8.  That argument, however, is without merit.  The Policy must be interpreted as a whole, *Nomura Home Equity*, 92 N.E.3d at 747, and the language that gives "residence premises" meaning is that in the Broad Form that contains the grant of coverage.  That language defines residence premises to be a one or two-family dwelling.  It thus follows that it is not sufficient for a structure to be covered under the Policy that the structure is located at 1022 Ogden Avenue; for it to be insured, the structure must also qualify as a residence premises under the Policy.  Put differently, the language to which Plaintiff refers states that "[t]he residence premise covered by this policy is *located at* the above insured address"; that language simply states that the covered premises are located at 1022 Ogden Avenue, and does not, as Plaintiff argues, state that the entirety of the building located at 1022 Ogden Avenue is covered or that any building at 1022 Ogden Avenue would be covered regardless of the number of units it contained.  Dkt. No. 22-5 at ECF p. 4.  When necessarily read in conjunction with the definition of residence premises contained in the Broad Form—given the reference to the term "residence premise" in the Amended Declaration—the description of the covered premises contained in the Amended Declaration is limited by the definition of "residence premises" in the Broad Form.

Second, Plaintiff also refers to the language of the Broad Form that includes within the definition of a residence premises "[t]hat part of any other building" where Plaintiff resides and

"which is shown as the 'residence premises' in the Declarations."  Dkt. No. 25 at 12 (quoting Dkt. No. 22-5 at ECF p. 14).  Plaintiff argues that the language cannot be construed to be limited to a two-dwelling unit without rendering other parts of the Policy definition that specifically include a two-family dwelling unit surplusage.  Dkt. No. 25 at 12–13.  But this argument too lacks merit.  The building described as the residence premises in the Amended Declaration is limited to a premises with two family units.  Thus, regardless whether the Policy definition of "residence premises" would permit the parties by subsequent declaration to include within the Policy coverage a structure other than a one- or two-unit dwelling, the parties here did not do so.  *See Almonte*, 3 N.Y.S.3d, at *4 (granting summary judgment to insurer because the policy at issue defined the "residence premises" as a one or two family home, but "plaintiffs' premises contained a third and separate dwelling unit in the basement, which renders it a three-family dwelling not covered under the policy").  Defendant has therefore established that the Policy did not cover the Premises.

## II.     Waiver and Estoppel

Plaintiff next argues that, even if the Policy is construed to limit coverage to premises that contain two or fewer units, the Court should still hold that he is entitled to coverage for the Premises because Defendant was on notice of the number of units in the building yet continued to accept premiums under the Policy and "lull Mr. Hall into believing that he had coverage for the next twenty years."  Dkt. No. 25 at 14–15.

An insured cannot, by the doctrine of waiver, obtain insurance "coverage to more than it originally bargained."  *Albert J. Schiff Assocs., Inc. v. Flack*, 417 N.E.2d 84 (N.Y. 1980).  "[W]here the issue is the existence or non-existence of coverage (e.g., the insuring clause and exclusions), the doctrine of waiver is simply inapplicable."  *Id.*; *see also U.S. Underwriters Ins. Co. v. 101-19 37th Ave. LLC*, 642 F. App'x 10, 12 n.3 (2d Cir. 2016) (summary order); *Juliano*

*v. Health Maint. Org. of N.J., Inc.*, 221 F.3d 279, 288 (2d Cir. 2000); *Weintraub v. Great N. Ins. Co.*, 648 F. Supp. 3d 472, 477 (S.D.N.Y. 2022).  Although an insurer may waive a defense to coverage when it fails to assert the defense when denying coverage to its insured, *see Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 511 (2d Cir. 2002), waiver cannot create coverage where such coverage is not already "subsisting," *Albert J. Schiff*, 417 N.E.3d at 84.

Estoppel is distinct from waiver.  *See, e.g.*, *Chi. Ins. Co. v. Kreitzer & Vogelman*, 265 F. Supp. 2d 335, 344 (S.D.N.Y. 2003).  Estoppel applies "where an insurer acts in a manner inconsistent with a lack of coverage, and the insured reasonably relies on those actions to its detriment."  *Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 95 (2d Cir. 2002). The paradigmatic example is where "an insurer, though not in fact obligated to provide coverage, defends the case without asserting any policy defenses, and as a consequence the insured reasonably suffers the detriment of losing control over its defense."  *Id.*; *see Sparta Ins. Co. v. Tech. Ins. Co., Inc.*, 751 F. App'x 32, 34 (2d Cir. 2018) (summary order); *Bluestein & Sander v. Chi. Ins. Co.*, 276 F.3d 119, 122 (2d Cir. 2002); *see also Merchs. Mut. Ins. Grp. v. Travelers Ins. Co.*, 806 N.Y.S.2d 813, at *3 (4th Dep't 2005) ("The doctrine of estoppel precludes an insurance company from denying or disclaiming coverage where the proper defending party relied to its detriment on that coverage and was prejudiced by the delay of the insurance company in denying or disclaiming coverage based on the 'loss of the right to control its defense.'" (quoting *Gen. Accident Ins. Co. v. U.S. Fid. & Guar. Ins. Co.*, 602 N.Y.S.2d 948 (3d Dep't 1993)).

Plaintiff has not adduced facts that would support an argument of equitable estoppel.  He asserts that Defendant "acted for twenty years as if there was valid insurance coverage," and points to an inspection conducted by Defendant of the Premises in 2002, which Plaintiff claims

would have put the insurer on notice of the configuration of the building. Dkt. No. 25 at 15–16. Construing the facts most favorably to the non-moving party, Defendant performed an inspection of the building located at 1022 Ogden Avenue when Defendant first issued insurance on the Premises in 2002. Dkt. No. 31 ¶ 41. Although it is not known whether an exterior or interior inspection of the building occurred, *id.* ¶ 44, a person driving by the building would have been able to discern whether it was a three-story building, *id.* ¶ 46, and a person walking through the ground floor entrance in 2002 would have seen a closed door with a lock that led to the ground floor unit, *id.* ¶ 45.[2] According to Plaintiff, these facts together establish that Defendant was on notice of the building's configuration when it issued the Policy.

Defendant's past conduct is not inconsistent with its current position. The conduct to which Plaintiff points was Defendant's collection of premiums. But that conduct is not inconsistent with its current position that the Policy did not cover the Premises. The Policy, on its face, provided insurance only for a two-unit dwelling. Defendant agreed only to insure a two-family dwelling and a two-family dwelling is one that can house two families. It is not a three-unit dwelling. There is no evidence that Defendant ever stated that it would insure a three-unit dwelling or that Plaintiff ever represented anything other than that the Premises contained two units.

Defendant did not, as is commonly the case in scenarios where equitable estoppel is deemed applicable, defend a case on behalf of Plaintiff. Nor did Defendant ever provide coverage on the Premises in a manner that would lead Plaintiff to rely on that coverage to its later detriment. *See Albert J. Schiff Assocs.*, 417 N.E.2d at 88 ("[T]here is no question of

---

[2] Although Defendant disputes these facts, it does not offer any evidence on this motion to call them into question.

estoppel in this case since the insurers at all times denied liability to indemnify and refused to undertake to defend.").  Plaintiff has therefore not established that estoppel is applicable here. *See Downstairs Cabaret, Inc. v. Wesco Ins. Co.*, 132 N.Y.S.3d 496 (4th Dep't 2020) ("Where, as here, there is no coverage under the policy, the doctrines of waiver and estoppel may not operate to create such coverage." (quoting *Charlestowne Floors, Inc. v Fid. & Guar. Ins. Underwriters, Inc.,* 791 N.Y.S.3d 748 (4th Dep't 2005)); *Penske Truck Leasing Co., L.P. v. Home Ins. Co.*, 674 N.Y.S.2d 400 (2d Dep't 1998) ("[T]he doctrine of estoppel may not be invoked to create coverage where none exists under the policy."); *United Fire & Cas. Co. v. Arkwright Mut. Ins. Co.*, 53 F. Supp. 2d 632, 643 (S.D.N.Y. 1999) ("Doctrines of waiver and estoppel may not be invoked to extend coverage or to create coverage where none exists.").

## III.    Mutual Mistake

Finally, Plaintiff argues that the Policy should be reformed to cover the Premises based upon the doctrine of mutual mistake.  Plaintiff contends that Defendant "claims to have made an error in its classification of the building," and that reformation of the Policy to cover the Premises would "have the effect of providing the coverage that the parties intended."  Dkt. No. 25 at 24.

"A claim for reformation of a written agreement must be grounded upon either mutual mistake or fraudulently induced unilateral mistake."  *Greater N.Y. Mut. Ins. Co. v. U.S. Underwriters Ins. Co.*, 827 N.Y.S.2d 147, 149 (1st Dep't 2007).  "In a case of mutual mistake, the parties have reached an oral agreement and, unknown to either, the signed writing does not express that agreement.  In a case of fraud, the parties have reached agreement, and unknown to one party but known to the other (who has misled the first), the subsequent writing does not properly express that agreement."  *Chimart Assocs. v. Paul*, 489 N.E.2d 231, 233–34 (N.Y. 1986).  This standard is difficult to satisfy.  "[T]here is a 'heavy presumption that a deliberately

prepared and executed written instrument manifest[s] the true intention of the parties' and a correspondingly high order of evidence is required to overcome that presumption." *Id.* at 234 (internal citation omitted) (quoting *George Backer Mgmt. Corp. v. Acme Quilting Co., Inc.*, 385 N.E.2d 1062, 1066 (N.Y. 1978)).  Accordingly, "a party proposing reformation must demonstrate 'in no uncertain terms' what the parties really agreed to and prove that a mistake occurred." *Trireme Energy Holdings, Inc. v. Innogy Renewables US LLC*, 2021 WL 3668092, at *13 (S.D.N.Y. Aug. 17, 2021) (quoting *Winmar Co. v. Tchrs. Ins. & Annuity Ass'n of Am.*, 870 F. Supp. 524, 535 (S.D.N.Y. 1994)).

Plaintiff has not offered evidence that creates a triable issue of mutual mistake.  The most that Plaintiff's evidence establishes is that he assumed that the Policy he purchased would cover the Premises because, at all times, there was a resident in the first-floor unit.  The intention of the Plaintiff that the Premises would include three dwelling units and still be covered under the Policy is not enough to warrant reformation if the insured did not communicate that intention to the insurer.  *See Ford Motor Credit Co. v. Atl. Mut. Ins. Co.*, 742 N.Y.S.2d 236 (1st Dep't 2002) ("Although [the plaintiff] seeks to reform the policy to include itself as an additional insured, it has not come forward with the necessary 'evidence of a very high order' 'to overcome the heavy presumption that [the] deliberately prepared and executed written instrument manifested the true intention of the parties.'" (quoting *George Backer Mgmt. Corp.*, 385 N.E.2d at 1066)); *Tower Ins. Co. of N.Y. v. Carranza*, 2015 WL 11237025, at *3 (Sup. Ct. Dec. 24, 2015).  The language of the Policy itself limits coverage to one- or two-family dwellings.  *See Hilgreen v. Pollard Excavating Inc.*, 146 N.Y.S.3d 323 (3d Dep't 2021).  That is what Plaintiff paid for and what he received.  Although it is reasonable to infer that both Plaintiff and Defendant assumed that the building at 1022 Ogden Avenue would qualify for homeowners' insurance, there is no basis to

infer that the insurer understood and agreed that Plaintiff would include in the first-floor space living quarters, a bathroom and a kitchen that would make that space a self-contained dwelling unit.

Plaintiff also has not offered evidence that Defendant defrauded or misled Plaintiff into believing that the Premises could be more than a two-family dwelling and still be covered by the Policy.  Plaintiff avers that Defendant conducted an inspection and could have seen in 2002 that the Premises had three floors and that the ground floor had its own lock.  But Plaintiff claims coverage under the 2022–2023 Policy and the relevant question thus is whether Defendant misled Plaintiff into believing that the Premises, as configured at that time, would be covered. There is no evidence to support that proposition.  Moreover, the fact that a building has three floors and that there was a lock on the ground floor would not put the insurer on notice that behind the lock there was a living space, a bathroom, and a kitchen.  The only representations contained in the record are those contained in the Policy—that the Premises would be covered if they contained no more than two dwelling units.  That is all that Defendant agreed to.  Plaintiff is not entitled to reformation on grounds of fraud.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is DENIED. Defendant's motion for summary judgment is GRANTED.

The Clerk of Court is respectfully directed to close Dkt. Nos. 22, 28 and to close this case.

SO ORDERED.

Dated: June 10, 2024
      New York, New York                        _____
                                          LEWIS J. LIMAN
                               United States District Judge