```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                 :
CLYTON HALL,                                                     :
                                                                 :
                                Plaintiff,                       :
                                                                 :      23-cv-2496 (LJL)
                -v-                                              :
                                                                 :      MEMORANDUM AND
MOUNTAIN VALLEY INDEMNITY COMPANY,                               :      ORDER
                                                                 :
                                Defendant.                       :
                                                                 :
-----------------------------------------------------------------X
```

LEWIS J. LIMAN, United States District Judge:

Plaintiff Clyton Hall ("Plaintiff" or "Hall") moves, pursuant to Federal Rule of Civil Procedure 59(e), for an order altering or amending the judgment dated June 11, 2024. Dkt. No. 41.

On June 10, 2024, the Court issued an opinion and order denying Plaintiff's motion for summary judgment and granting the motion of Defendant Mountain Valley Indemnity Company's ("Defendant" or "Mountain Valley") for summary judgment. *Hall v. Mountain Valley Indem. Co.*, 2024 WL 2943747 (S.D.N.Y. June 10, 2024).[1] Applying New York law, the Court concluded that the undisputed evidence showed that the homeowners' insurance policy at issue (the "Policy") did not cover Plaintiff's three-story building located at 1022 Ogden Avenue, Bronx, New York. *Id.* at *4–7. The Court also rejected Plaintiff's arguments concerning waiver and estoppel and reformation on the basis of mutual mistake. *Id.* at *7–9. The Clerk of Court entered judgment and closed the case on June 11, 2024. Dkt. No. 40.

Plaintiff argues that the Court's opinion was in error and thus that the judgment should be altered for multiple reasons: (1) the Court misapplied New York contract and insurance law to

---

[1] The Court refers to the prior opinion and order for a comprehensive description of the undisputed facts and procedural history of the case. *See generally Hall*, 2024 WL 2943747.

determine that the Policy did not cover any part of Plaintiff's building; (2) the Court incorrectly applied the doctrines of estoppel and waiver; and (3) the Court viewed Plaintiff's mutual mistake argument "through the wrong prism." Dkt. No. 42. Plaintiff requests that the Court alter or amend its judgment to grant Plaintiff's cross-motion for summary judgment or, in the alternative, to vacate the grant of summary judgment to Defendant to allow the case to proceed to trial. *Id.* at 25.

Defendant submitted a memorandum of law in opposition to Plaintiff's motion on July 19, 2024. Dkt. No. 43. Plaintiff submitted a reply memorandum of law in support of his motion on July 26, 2024. Dkt. No. 44.

Although the Court is sympathetic to Plaintiff's unfortunate situation, the law does not permit expansion of the Policy in the ways that Plaintiff requests. For the following reasons, Plaintiff's motion to alter the judgment is DENIED.

## LEGAL STANDARD

Federal Rule of Civil Procedure 59(e) allows a district court "to alter or amend a judgment." Fed. R. Civ. P. 59(e). This rule "enables a party to request that a district court reconsider a just-issued judgment." *Banister v. Davis*, 590 U.S. 504, 507 (2020). The rule "gives a district court the chance 'to rectify its own mistakes in the period immediately following' its decision." *Id.* (quoting *White v. N.H. Dep't of Emp. Sec.*, 455 U.S. 445, 450 (1982)). The Second Circuit has explained that "under the rule[,] 'district courts may alter or amend judgment to correct a clear error of law or prevent manifest injustice,' that the rule 'covers a broad range of motions,' and that 'the only real limitation on the type of motion permitted is that it must request a substantive alteration of the judgment, not merely the correction of a clerical error, or relief of a type wholly collateral to the judgment.'" *ING Glob. v. United Parcel Serv. Oasis Supply Corp.*, 757 F.3d 92, 96 (2d Cir. 2014) (quoting *Schwartz v. Liberty Mut. Ins. Co.*, 539 F.3d 135, 153 (2d Cir. 2008)).

"A court may grant a Rule 59(e) motion only when the [movant] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 142–43 (2d Cir. 2020) (citations omitted). "A Rule 59(e) motion . . . 'may not be used to relitigate old matters, or raise arguments . . . that could have been raised prior to the entry of judgment.'" *Bonded Concrete, Inc. v. D.A. Collins Constr. Co.*, 29 F. App'x 725, 726 (2d Cir. 2002) (summary order) (quoting 9C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2810.1 (2d ed. 1995)).

## DISCUSSION

### I.  Interpretation of the Policy

Plaintiff argues that the Court incorrectly interpreted the definition of "residence premises" to exclude the building at issue and that the interpretation created an insurance policy with illusory coverage. Dkt No. 42 at 3–13. The Court briefly addresses each argument in turn.

#### A.  The Definition of "Residence Premises"

The Court's prior opinion found that the "Policy provides coverage to the 'dwelling on the "residence premises" shown in the Declarations.'" *Hall*, 2024 WL 2943747, at *5 (quoting Dkt. No. 22-5 at ECF p. 15)). The Policy defines "residence premises" to mean:

> (a) The one family dwelling, other structures, and grounds; or
>
> (b) That part of any other building;
>
> where you reside and which is shown as the "residence premises" in the Declarations.
>
> "Residence premises" also means a two family dwelling where you reside in at least one of the family units and which is shown as the "residence premises" in the Declarations.

3

Dkt. No. 22-5 at ECF p. 14. Accordingly, the Court's prior opinion stated that "[t]he first requirement, that the home be a residence premises, is satisfied if: (1) the Named Insured resides in it; (2) it is described in the Declarations; and (3) it is either the 'one family dwelling, other structures, and grounds' where the Named Insured resides or the part of another building where the Named Insured resides, or the entirety of a two-family dwelling in which the Named Insured resides in one of the family units." *Hall*, 2024 WL 2943747, at *5 (quoting Dkt. No. 22-5 at ECF p. 15). In turn, the operative Declaration for the period in which the fire occurred states that the residence premises is a frame type construction built in 1959 and the "No. Families" is "2." Dkt. No. 42 at 4. The Court thus concluded that "the Policy is not ambiguous, and that under the Policy, Plaintiff is not entitled to coverage of a premises that includes three units." *Hall*, 2024 WL 2943747, at *5.

Plaintiff argues that the Court's reading "disregarded and gave no effect to that part of the clause providing coverage for 'that part of any other building'" and that the definition of "residence premises" should be read more broadly to effectuate the parties' intent of insuring 1022 Ogden Avenue, even if it is a three-family dwelling." Dkt. No. 42 at 4–5. In the alternative, Plaintiff argues the Court should at least alter its judgment to rule that "Mr. Hall is entitled to insurance coverage for the part of the building where he resided—the third floor." Dkt. No. 42 at 12–13. But Plaintiff's urged reading itself fails to give effect to the Policy's language. *See Nomura Home Equity Loan, Inc., Series 2006-FM2, by HSBC Bank USA, Nat'l Ass'n v. Nomura Credit & Cap., Inc.*, 92 N.E.3d 743, 748 (N.Y. 2017) ("[A] contract must be construed in a manner which gives effect to each and every part, so as not to render any provision meaningless or without force or effect." (quoting *Ronnen v. Ajax Elec. Motor Corp.*, 671 N.E.2d 534, 536 (N.Y. 1996))); *Hall*, 2024 WL 2943747, at *4 (same). The phrase "any other building" cannot be read to broadly

4

expand coverage to truly any other building; it is necessarily constrained by the attendant language requiring that such building be shown as the residence premises in the Declarations. *Hall*, 2024 WL 2943747, at *5; *accord Marshall v. Tower Ins. Co. of N.Y.*, 845 N.Y.S.2d 90, 90 (2d Dep't 2007) (granting summary judgment to insurance company on plaintiff's claim for denial of coverage pursuant to similar policy and holding that the set-off clause "where you reside and which is shown as the 'residence premises' in the Declarations" applies to and modifies the phrase "[t]hat part of any other building").

Plaintiff next argues that the Court improperly read the number "2" stated under the heading "No. Families" in the Declarations to mean "the physical unit" rather than the traditional meaning of the term "family." Dkt. No. 42 at 5, 10–12. New York courts have expressly rejected this argument and found that "the only reasonable interpretation of the question '# Families' is that it seeks the number of separate dwelling units in the building." *Hermitage Ins. Co. v. LaFleur*, 953 N.Y.S.2d 209, 209 (1st Dep't 2012) (citing N.Y. Mult. Dwell. Law § 4(6), (7)); *accord Dauria v. CastlePoint Ins. Co.*, 960 N.Y.S.2d 105, 105 (1st Dep't 2013); *see also 1070 Park Ave. Corp. v. Fireman's Fund Ins. Co.*, 313 F. Supp. 3d 528, 540 (S.D.N.Y. 2018) (finding that the term "vehicles" does not include wheeled storage bins because "one cannot determine the meaning of words in an insurance policy just by looking them up in a dictionary; instead, one must read the policy as a whole"), *aff'd*, 777 F. App'x 561 (2d Cir. 2019). Plaintiff repeats the same arguments as to ambiguity that he raised on summary judgment. *Compare* Dkt. No. 42 at 5–6 *with* Dkt. No. 25 at 8–11. A "mere disagreement with the Court's legal determination is not a valid basis for reconsideration." *E.E.O.C. v. Bloomberg L.P.*, 751 F. Supp. 2d 628, 651 (S.D.N.Y. 2010) (citing *United States v. Kerik*, 615 F. Supp. 2d 256, 276 (S.D.N.Y. 2009)). Plaintiff does not raise any controlling authority or fact that the Court overlooked, intervening change or law, or injustice that

5

would warrant revisiting its interpretation.  *See Metzler*, 970 F.3d at 142.[2]  Alteration is not warranted on this basis.

### B.     Illusory Coverage

Plaintiff argues that the Court's reading of the Policy to exclude his three-family-dwelling building from coverage creates an illusory contract. Dkt. No. 42 at 6–9 ("Plaintiff paid money [in the form of insurance premiums] for twenty years, but he received nothing in return except a worthless stack of papers in the form of a bogus insurance policy."). An illusory contract is "'[a]n agreement in which one party gives as consideration a promise that is so insubstantial as to impose no obligation'" and is "'unenforceable.'" *Lend Lease (US) Const. LMB Inc. v. Zurich Am. Ins. Co.*, 71 N.E.3d 556, 556 (N.Y. 2017) (quoting Black's Law Dictionary 370 (9th ed. 2009)). "[A]n insurance policy is not illusory if it provides coverage for some acts" even if it is subject to a "potentially wide exclusion." *Id.* (citation omitted); *see also Aspen Specialty Ins. Co. v. 4 NYP Ventures LLC*, 162 F. Supp. 3d 337, 345 (S.D.N.Y. 2016) ("Insurance coverage is illusory where the insured purchases no effective protection.").

---

[2] Plaintiff argues that the Court erred because Defendant's Rule 30(b)(6) witness acknowledged that the heading "No. Families" was ambiguous and "Plaintiff is aware of no other case where a defendant acknowledges at deposition that a word is ambiguous and the Court holds that it is not." Dkt. No. 42 at 11–12.  But under New York law, contract interpretation—including whether a contract is ambiguous—"'is a matter of law for the court to decide.'" *Int'l Multifoods Corp. v. Com. Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002) (quoting *K. Bell & Assocs., Inc. v. Lloyd's Underwriters*, 97 F.3d 632, 637 (2d Cir. 1996)); *Hall*, 2024 WL 2943747, at *4.  "A 30(b)(6) witness's legal conclusions are not binding on the party who designated him." *S. Wine & Spirits of Am., Inc. v. Div. of Alcohol & Tobacco Control*, 731 F.3d 799, 811 (8th Cir. 2013); *see also AstenJohnson, Inc. v. Columbia Cas. Co.*, 562 F.3d 213, 229 n.9 (3d Cir. 2009) (holding that Rule 30(b)(6) witness' "legal conclusions [were] not binding" on the party where the witness' testimony "contained no factual admissions, nor did it discuss the intention of the parties when forming the contract" and instead the witness "offered only his own interpretation of the contract based on his reading"); *MVP Health Plan, Inc. v. Optuminsight, Inc.*, 2016 WL 6638190, at *12 (N.D.N.Y. Sept. 30, 2016) (holding that Rule 30(b)(6) witness' testimony "cannot bind [party] to the legal conclusion that there was no contract").

Although Plaintiff states that "this Court is in violation of *Lend Lease* by approving that Mountain Valley may provide a mere chimera of an insurance policy," Dkt. No. 42 at 8, the Policy is not some unattainable fiction providing coverage only for circumstances that could never materialize, *see, e.g.*, *Crum & Forster Specialty Ins. Co. v. DVO, Inc.*, 939 F.3d 852, 857 (7th Cir. 2019) (finding that a professional malpractice insurance policy provided illusory coverage where it excluded claims alleged by the party to the contract because "[t]he overlap between claims of professional malpractice and breach of contract is complete"). In fact, the New York Court of Appeals' decision in *Lend Lease* bolsters, rather than vitiates, the Court's prior opinion. *Lend Lease* held that where an insurance policy excluded temporary works coverage for contractor's tools—thus permitting the insurer to deny coverage for a damaged crane—that exclusion did "not defeat *all* of the coverage afforded under the policy[]." 71 N.E.3d at 556. The *Lend Lease* Court therefore held that "[t]he enforcement of the exclusion does not create a result that would have the exclusion swallow the policy" and "[f]or the same reason the exclusion does not render the coverage granted under the temporary works provision illusory." *Id.* (citations omitted).[3] Here too, the definition of residence premises does not "defeat *all* of the coverage," *id.*, the Policy still provides coverage for some acts—notably it provides coverage for a one- or two-family dwelling or any other building in which Plaintiff resides and which is shown in the Declarations.

---

[3] The Court similarly rejects Plaintiff's arguments that *Lend Lease* is at odds with lower state court cases upon which the Court's prior opinion relied such as *Almonte v. Castlepoint Ins. Co.*, 3 N.Y.S.3d 284 (Sup. Ct. Oct. 8, 2014), *aff'd*, 33 N.Y.S.3d 718 (1st Dep't 2016) and *Elshazly v. Castlepoint Ins. Co.*, 29 N.Y.S.3d 847 (Sup. Ct. Nov. 16, 2015). Dkt. No. 42 at 9–10. The holding in *Lend Lease* that a policy exclusion does not render coverage illusory does not conflict with the holdings in *Almonte* and *Elshazly* that where the premises have more dwellings than the policy's definition of residence premises allows for, such premises do not constitute residence premises entitled to coverage.

As the Court stated in its prior opinion, "the number of dwelling units contained in a building is determined by its structural configuration and the number of self-contained dwelling units." *Hall*, 2024 WL 2943747, at *5 (citing *Koczwara v. Nationwide Gen. Ins. Co.*, 2022 WL 1471121, at *5 (S.D.N.Y. May 10, 2022); *Almonte*, 3 N.Y.S.3d 284; *Castlepoint Ins. Co. v. Jaipersaud*, 4 N.Y.S.3d 498 (1st Dep't 2015); *Dauria*, 960 N.Y.S.2d at 106. Had Plaintiff reconfigured the building to be a one- or two- family dwelling, the building would have been within the scope of coverage. The fact that Plaintiff's building fell outside the scope of coverage may have made him unable to recover under the Policy—thus making the Policy valueless to him—but it does not mean that the Policy was a thing of such insubstantial value as to impose no obligation on Defendant. *See Nassau Cnty. v. N.Y. State Urb. Dev. Corp.*, 70 N.Y.S.3d 246, 248 (1st Dep't 2018) (To constitute consideration "the thing promised need not benefit the promisee." (citing *Weiner v. McGraw-Hill, Inc.*, 443 N.E.2d 441, 445 (N.Y. 1982)).[4] "[T]he agreement is not illusory because it nevertheless has some value." *Roberts v. Weight Watchers Int'l, Inc.*, 712 F. App'x 57, 60 (2d Cir. 2017).

The Policy is not an illusory contract and no alteration of the judgment is warranted on that basis.

## II.     Waiver and Estoppel

As the Court stated in its prior opinion, "[a]n insured cannot, by the doctrine of waiver, obtain insurance 'coverage to more than it originally bargained.'" *Id.* at *7 (quoting *Albert J. Schiff Assocs., Inc. v. Flack*, 417 N.E.2d 84 (N.Y. 1980)). Plaintiff argues that the language pertaining to "No. Families" should be viewed as a policy exclusion and thus may be waived. Dkt

---

[4] For example, if a landlubber bought an insurance policy for a boat, the insurance policy would not be illusory prior to the insured's purchase of a boat that falls within the policy's scope of coverage. The policy itself is of value even if the insured is not yet in a position to capitalize upon that value.

No. 42 at 17–20.  However, even if Plaintiff is correct that such language operated as a policy exclusion—and the Court does not agree that Plaintiff is correct[5]—Plaintiff is certainly incorrect that in the present circumstances such exclusion is waivable so as to give rise to otherwise nonexistent coverage.  Under New York law, "the failure to disclaim coverage does not create coverage which the policy was not written to provide." *Zappone*, 432 N.E.2d at 785.  "[W]here the issue is the existence or nonexistence of coverage (e. g., the insuring clause *and exclusions*), the doctrine of waiver is simply inapplicable." *Albert J. Schiff*, 417 N.E.2d at 87 (emphasis added); *accord U.S. Underwriters Ins. Co. v. 101-19 37th Ave. LLC*, 642 F. App'x 10, 12 n.3 (2d Cir. 2016) (summary order); *Juliano v. Health Maint. Org. of N.J., Inc.*, 221 F.3d 279, 288 (2d Cir. 2000); *Hall*, 2024 WL 2943747, at *7.

Plaintiff cites four cases in support of his argument that the Policy's supposed exclusion can be waived.  Dkt. No. 42 at 20 n.8 (citing *Albert J. Schiff*, 417 N.E.2d at 87; *City of New York v. Phila. Indem. Ins. Co.*, 485 F. Supp. 3d 410, 412 (S.D.N.Y. 2020); *Kokonis v. Hanover Ins. Co.*, 719 N.Y.S.2d 376 (3d Dept. 2001); *Allstate Ins. Co. v. Arpaia*, 714 N.Y.S.2d 326 (2d Dept. 2000)).  None are availing.  The first, *Albert J. Schiff*, contradicts Plaintiff's argument and holds that waiver "does not create coverage, for the underlying coverage must be subsisting if the forfeiture is to serve any purpose."  417 N.E.2d at 87.  The remaining three concern application of section 3420 of New York Insurance Law which provides that "an insurer must notify an insured as 'soon as is reasonably possible' of its intention to disclaim coverage for bodily injury under a policy." *U.S.*

---

[5] The New York Court of Appeals has recognized "the significant distinction between a denial of coverage for failure of inclusion and one based on a policy exclusion." *Planet Ins. Co. v. Bright Bay Classic Vehicles, Inc.*, 553 N.E.2d 562, 564 (N.Y. 1990) (citing *Zappone v. Home Ins. Co.*, 432 N.E.2d 783, 786 (N.Y. 1982)).  The Policy's language regarding the number of families provides the very definition of what building would be included within the scope of coverage. Dkt. No. 22-5 at ECF pp. 14–15.

9

*Underwriters Ins. Co. v. City Club Hotel, LLC*, 369 F.3d 102, 106–07 (2d Cir. 2004) (quoting N.Y. Ins. Law § 3420); *see Phila. Indem.*, 485 F. Supp. 3d at 417; *Kokonis*, 719 N.Y.S.2d at 376; *Allstate Ins.*, 714 N.Y.S.2d at 326. But even if Plaintiff were claiming coverage of a bodily injury, "a disclaimer pursuant to Insurance Law § 3420(d) [i]s not required" if "the policy never provided coverage for the claim at issue." *Interboro Ins. Co. v. Fatmir*, 933 N.Y.S.2d 343, 345 (2d Dep't 2011) (citation omitted); *see also id.* (finding the policy never provided coverage to the claim at issue "because the policy only provided liability coverage to the insured for premises which he and his household occupied for residential purposes" and the insured did not reside in the subject premises); *Metro. Prop. & Cas. Ins. Co. v. Pulido*, 710 N.Y.S.2d 375, 377 (2d Dep't 2000) ("[T]he issue of a timely disclaimer is irrelevant if, in the first instance, the policy never provided coverage for the particular claim at issue."); *Zappone* 432 N.E.2d at 785. Plaintiff has not shown any basis to disturb the Court's judgment on the basis of waiver.

Estoppel applies "where an insurer acts in a manner inconsistent with a lack of coverage, and the insured reasonably relies on those actions to its detriment." *Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 95 (2d Cir. 2002); *Hall*, 2024 WL 2943747, at *7. In its prior opinion, the Court held that the undisputed evidence shows that "Defendant's past conduct is not inconsistent with its current position." *Hall*, 2024 WL 2943747, at *8. Defendant's collection of Plaintiff's premium payments is therefore consistent with its position that it insured a one- or two-dwelling premise, and such conduct does not estop Defendant from denying coverage for a building with three dwellings.

Plaintiff takes umbrage with the Court's statement that "[t]here is no evidence that Defendant ever stated that it would insure a three-unit dwelling or that Plaintiff ever represented anything other than that the Premises contained two units." Dkt. No. 42 at 14 (quoting *Hall*, 2024

10

WL 2943747, at *8). He misreads this statement as (1) finding that the Plaintiff affirmatively represented that the building contained two units; and (2) holding that waiver or estoppel will not attach absent direct communication between the parties. *Id.* That statement in the Court's prior opinion merely reflects the absence of evidence that Defendant acted inconsistently with its present position, such as, hypothetically, by responding affirmatively to Plaintiff's explicit request that it insure a three-dwelling building. *Hall*, 2024 WL 2943747, at *8. On the instant motion for alteration, Plaintiff still adduces no evidence that Defendant has ever undertaken conduct that would indicate it would provide insurance coverage for a three-family-dwelling building.

Plaintiff also argues that in the absence of documents pertaining to the 2002 building inspection, the Court should draw an adverse inference. Dkt. No. 42 at 15–17. The Second Circuit has held that "a party seeking an adverse inference instruction based on the destruction of evidence must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002) (citation omitted). However, Plaintiff has not established—on either summary judgment or the present motion—that the missing documents are relevant to the issue of estoppel. Dkt. Nos. 25, 34, 42, 44. Plaintiff did not adduce any facts showing Defendant's culpable mental state and his request for an inference was properly denied on that ground alone. Even if the inspector had reviewed the building and noted that the building contained three family dwelling units, Plaintiff cannot work the doctrine of estoppel "to create coverage where none exists under the policy." *Penske Truck Leasing Co., L.P. v. Home Ins. Co.*, 674 N.Y.S.2d 400, 401 (2d Dep't 1998) (collecting cases); *see also Downstairs Cabaret, Inc. v.*

11

*Wesco Ins. Co.*, 132 N.Y.S.3d 496, 498 (4th Dep't 2020); *United Fire & Cas. Co. v. Arkwright Mut. Ins. Co.*, 53 F. Supp. 2d 632, 643 (S.D.N.Y. 1999); *Hall*, 2024 WL 2943747, at *8.

Plaintiff's citation to *Holly Realty, LLC v. Union Mut. Fire Ins. Co.*, 2023 WL 2771604 (E.D.N.Y. Apr. 4, 2023), is not to the contrary. Dkt. No. 42 at 15–16. There, the question was whether the insurer's knowledge that the insured had made a misrepresentation of the risk meant that the insurer had waived its ability to rescind the policy as void ab initio. *Holly Realty*, 2023 WL 2771604, at *2–3. Because a misrepresentation is material if "knowledge by the insurer of the facts misrepresented would have led to a refusal by the insurer to make such a contract[,]" *id.* at *2 (citation omitted), the insurer's willingness to enter into a contract notwithstanding knowledge of the misrepresentation would be inconsistent with the finding of materiality necessary to rescind the contract. This is consistent with the principle that "[u]nder New York law, the issue of the existence or non-existence of coverage cannot be waived[;] [o]nly defenses to coverage can be waived." *In re Balfour MacLaine Int'l Ltd.*, 85 F.3d 68, 82 (2d Cir. 1996) (citations omitted). *U.S. Life Ins. Co. in City of New York v. Blumenfeld*, 938 N.Y.S.2d 84 (1st Dep't 2012), another case on which Plaintiff relies, Dkt. No. 42 at 16, rests on a similar basis. *See Blumenfeld*, 938 N.Y.S.2d at 84 ("[A]n insurer that accepts premiums after learning of facts that it believes entitles it to rescind the policy has waived the right to rescind.").

Alteration is not warranted on the basis of either waiver or estoppel.

**III.  Mistake**

It is black letter law that "[w]here a writing that evidences or embodies an agreement in whole or in part fails to express the agreement because of a mistake of both parties as to the contents or effect of the writing, the court may at the request of a party reform the writing to express the agreement." Restatement (Second) of Contracts § 155 (1981); *Collins v. Harrison-Bode*, 303 F.3d 429, 434 (2d Cir. 2002). "[A]s used in the doctrine of 'mutual mistake,' mistake

12

means being in error in one's belief as to what the contract states." *AMEX Assurance Co. v. Caripides*, 316 F.3d 154, 161 (2d Cir. 2003).

As the Court previously noted, this is a difficult standard to satisfy. *See Hall*, 2024 WL 2943747, at *8. "Because the remedy of reformation presents the danger 'that a party, having agreed to a written contract that turns out to be disadvantageous, will falsely claim the existence of a different, oral contract,' the New York courts have sharply limited the remedy of reformation both procedurally and substantively." *Collins*, 303 F.3d at 435 (quoting *Chimart Assocs. v. Paul*, 489 N.E.2d 231, 234 (N.Y. 1986)). One such procedural bar is the "'heavy presumption that a deliberately prepared and executed written instrument manifest[s] the true intention of the parties'" and the "correspondingly high order of evidence [that] is required to overcome that presumption." *Chimart*, 489 N.E.2d at 234 (quoting *George Backer Mgmt. Corp. v. Acme Quilting Co.*, 385 N.E.2d 1062, 1066 (N.Y. 1978)). "The proponent of reformation must 'show in no uncertain terms, not only that mistake or fraud exists, but exactly what was really agreed upon between the parties.'" *Id.* (quoting *George Backer Mgmt.*, 385 N.E.2d at 1066); *Hall*, 2024 WL 2943747, at *9.

The Court previously held that "Plaintiff has not offered evidence that creates a triable issue of mutual mistake," reasoning that even if Plaintiff intended the Policy to cover three dwelling units, there is no evidence that Defendant shared that intent at any time. *Hall*, 2024 WL 2943747, at *9.

Plaintiff argues that "[t]he agreement was unquestionably to insure 1022 Ogden Avenue, period" and that the policy should be reformed "to provide coverage for the building." Dkt. No. 42 at 23. But Plaintiff still provides no evidence that Defendant ever agreed or intended to insure the building at 1022 Ogden Avenue without regard to the number of dwellings comprising it. *See*

13

*Tower Ins. Co. of New York v. Carranza*, 2015 WL 11237025 (N.Y. Sup. Ct. 2015) (reformation not available where plaintiff sought to add an additional insured because insured "presents no evidence that [defendant] intended to procure a policy that insured [supposed additional insured] as well as her"); *Ford Motor Credit Co. v. Atl. Mut. Ins. Co.*, 742 N.Y.S.2d 236, 237 (1st Dep't 2002). Plaintiff's apparent misconception about the scope of the insurance policy he signed does not indicate that Defendant shared such a misconception. *See AMEX Assurance*, 316 F.3d at 161 (holding that although policy-holder "may have mistakenly believed the policy, in the event either he or [his wife] perished without leaving a surviving spouse, would pay its benefit to their children, in preference to their parents and siblings, this mistake was not mutual" because the insurer "had drafted the policy and knew what it provided"); *see also Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am.*, 420 F. Supp. 3d 123, 145 (S.D.N.Y. 2019) (dismissing reformation claim because "MSI is a sophisticated insurance company, and the Complaint does not allege facts which give rise to any inference that MSI was not fully aware of every term in the proposed and final insurance policies that it prepared and issued"); *J.A.V. Petroleum Inc. v. Norguard Ins. Co.*, 2018 WL 10676901, at *5 (E.D.N.Y. June 19, 2018) ("[W]here, as here, the insurer drafted the policy and, thus, knew what it provided, there is no mutual mistake.").

Absent a showing of mutual mistake or evidence of an alternative agreement, Plaintiff's arguments based on mutual mistake fail. Plaintiff's additional argument based on unilateral mistake, Dkt. No. 42 at 31, fails for the same reasons stated in the Court's prior opinion. *See Hall*, 2024 WL 2943747, at *9; *Bonded Concrete*, 29 F. App'x at 726 (Rule 59(e) motion cannot be used to relitigate old matters).

## CONCLUSION

Plaintiff's motion to alter the judgment is DENIED.

The Clerk of Court is respectfully directed to close Dkt. No. 41.

SO ORDERED.

Dated: October 30, 2024
      New York, New York

                                          LEWIS J. LIMAN
                                     United States District Judge